126 P.3d 165

**Vishal CHAURASIA, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

**No. 1 CA–CV 04–0264.**

Court of Appeals of Arizona, Division 1, Department E.

Jan. 3, 2006.

---

## FACTUAL AND PROCEDURAL HISTORY

¶2 Chaurasia purchased a 2001 Chevrolet Corvette on October 17, 2000 from NuCar Connection. The Corvette came with a New Vehicle Limited Warranty from GM, the manufacturer. Subject to certain exclusions, the warranty covered the vehicle for three years or 36,000 miles, whichever came first. It entitled Chaurasia to repairs and part replacements to correct defects in materials or workmanship at no cost whenever he brought the vehicle to an authorized repair facility during the warranty period.

¶3 Chaurasia discovered numerous defects. He took the Corvette to authorized dealers for repairs but remained unsatisfied. Accordingly, he sued GM, asserting that it had violated the Magnuson–Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301–2312 (1998), by breaching the express warranty and the implied warranty of merchantability, thereby entitling him to revocation of acceptance.

¶4 GM moved for summary judgment. The trial court granted judgment as matter of law in favor of GM and awarded $5107 in attorneys' fees to GM. Chaurasia timely appealed.

## DISCUSSION

**A. As a matter of law, Chaurasia demonstrated no breach of the limited express warranty**

¶5 On appeal from a grant of summary judgment, we determine de novo whether there is a genuine issue of disputed material fact and, if not, whether the trial court correctly applied the substantive law. *In re Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991) (citations omitted). To demonstrate a triable issue of fact, the party opposing summary judgment must set forth specific facts demonstrating a genuine issue for trial. Ariz. R. Civ. P. 56(e). We view the facts in the light most favorable to the party against whom summary judgment was granted. *Estate of Hernandez v. Flavio,* 187 Ariz. 506, 509, 930 P.2d 1309,

Krohn & Moss, Ltd. By Marshall Meyers, Phoenix, Attorneys for Plaintiff–Appellant.

Bowman and Brooke LLP By Negatu Molla and Sonia I. Krainz, David Williams, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

THOMPSON, Judge.

¶1 Vishal Chaurasia challenges the trial court's grant of summary judgment and attorneys' fees to General Motors Corporation (GM) under Arizona Revised Statutes (A.R.S.) § 12–341.01 (2004). For the following reasons, we affirm.

1312 (1997) (citing *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990)). The interpretation of a statute is a question of law that we review de novo. *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 594, 826 P.2d 1217, 1220 (App.1991) (citing *U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211, 772 P.2d 33, 34 (App.1989)).

¶ 6 Chaurasia claims that GM breached an express warranty by failing to make the promised repairs and replacements of defective components. According to Chaurasia, a breach occurs when a defect is discovered in a vehicle or when the manufacturer is unable to make the vehicle defect free after at least two repair attempts.

¶ 7 The MMWA contemplates that warranties may be full or limited:

(a) Full (statement of duration) or limited warranty

Any warrantor warranting a consumer product by means of a written warranty shall clearly and conspicuously designate such warranty in the following manner, unless exempted from doing so by the Commission pursuant to subsection (c) of this section:

(1) If the written warranty meets the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a "full (statement of duration) warranty" [sic].

(2) If the written warranty does not meet the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a "limited warranty" [sic].

15 U.S.C. § 2303.

¶ 8 GM's warranty did not meet the federal minimum standards of 15 U.S.C. § 2304,[1] and the MMWA consequently allowed GM to conspicuously label the warranty as a "limited" warranty. The MMWA is virtually silent with respect to requirements for manufacturers issuing a limited written warranty. *See Ventura v. Ford Motor Corp.*, 180 N.J.Super. 45, 433 A.2d 801, 809 (Ct.App.

Div.1981) (" 'Limited' warranties protect consumers by prohibiting disclaimers of implied warranties . . . but are otherwise not described in the act."), *disapproved on other grounds, Ramirez v. Autosport*, 88 N.J. 277, 440 A.2d 1345, 1351 (1982). The MMWA requires only that the limited warranty not disclaim or limit the duration of any implied warranties to a period shorter than the duration of an express warranty. *Id.* at 809 (quoting 15 U.S.C. § 2308). Express warranties are treated like any other contract and interpreted according to general contract principles. *Ex parte Miller*, 693 So.2d 1372, 1376 (Ala.1997).

¶ 9 There is no cause of action under the MMWA for a limited warranty unless the consumer can prove that the manufacturer did not comply with the limited express warranty's terms. *See, e.g., Lara v. Hyundai Motor Am.*, 331 Ill.App.3d 53, 264 Ill.Dec. 416, 770 N.E.2d 721, 728 (2002) (claim for breach of limited warranty is governed by the state version of the Uniform Commercial Code); *Razor v. Hyundai Motor Am.*, 349 Ill.App.3d 651, 286 Ill.Dec. 190, 813 N.E.2d 247, 258 (2004) (same). GM's limited express warranty provides that it will pay for repairs needed to correct defects in materials or workmanship: "Warranty repairs, including towing, parts and labor, will be made at No Charge." To prove a breach of this warranty, Chaurasia must demonstrate that GM refused or otherwise failed to pay for the repair to a covered item. Here, GM paid for all claimed warranty repairs made by its authorized facilities. Chaurasia submitted no controverting evidence to the trial court. Accordingly, GM was entitled to judgment as a matter of law.

¶ 10 Nevertheless, Chaurasia attempts to claim the benefits of a full warranty. When a warranty is full, "then the warranty on such product shall, for purposes of any action under section 2310(d) of this title or under any State law, be deemed to incorporate at least the minimum requirements of this section and rules prescribed under this section." 15 U.S.C. § 2304(e). One of the require-

---

**1.** The warranty is limited because it excludes consequential damages, such as lost wages or vehicle rental expenses. 15 U.S.C. § 2304(a)(3); *see* 2 Barkley Clark & Christopher Smith, *The Law of Product Warranties* § 16:14 at 16–14 to 16–15 (West 2002).

ments is that the manufacturer is obligated to refund or replace a product if it contains a defect after a reasonable number of attempts by the warrantor to remedy the defect. 15 U.S.C. § 2304(a)(4).

¶ 11 Other courts have refused to apply the reasonable number of attempts requirement when the plaintiff holds a limited express warranty. In *Lankford v. Rogers Ford Sales,* 478 S.W.2d 248, 249 (Tex.Civ.App. 1972), the plaintiff argued that the limited warranty "failed in its essential purpose" when the vehicle had been in the repair facility for forty-five days during the first eighteen months of ownership. The trial court granted summary judgment to the manufacturer because it had made repairs to the vehicle under the limited warranty's terms. *Id.* at 249, 251. The Texas Court of Appeals affirmed, explaining:

> there is no allegation of any repudiation of the limited warranty, nor any allegation of any wilful failure or refusal to make the repairs needed nor any allegation of dilatory, careless or negligent compliance with the terms of the limited warranty. In the absence of such circumstances, we must conclude, as a matter of law, that the limited warranty has not failed in its essential purpose. The Defendants having complied with the provisions of the warranty as admitted by the Plaintiff himself, are thus entitled to assert its provisions in limitation of the remedies and liabilities expressed therein.
>
> We therefore affirm the judgment of the trial Court.

*Id.* at 251 (citations omitted); *accord Ford Motor Co. v. Olive,* 234 So.2d 910 (Miss.1970) (finding in favor of the manufacturer because the dealer repaired the vehicle and the man-

ufacturer furnished the parts and paid for the labor every time it was brought in for repair); *Mattson v. General Motors Corp.,* 9 Mich.App. 473, 157 N.W.2d 486 (1968) (upholding a directed verdict in favor of the manufacturer on the breach of express warranty claim because the evidence showed that the manufacturer made repairs as promised under the warranty).

¶ 12 The cases on which Chaurasia relies for the flawed proposition that repairs must be made in a reasonable number of attempts deal with Uniform Commercial Code (UCC) provisions adopted into state law and Arizona's Lemon Law, not limited warranties under the MMWA.[2] Congress has exempted limited warranties from the reasonable number of attempts requirement of full warranties. *See generally* 2 Barkley Clark & Christopher Smith, *The Law of Product Warranties* § 16.10. Absent contrary language, Chaurasia cannot engraft the UCC or Arizona Lemon Law reasonableness cases onto his MMWA claim and cannot derive the benefit of the cited authorities.

¶ 13 Chaurasia also claims that the breach of warranty occurs when the consumer first detects a defect. Car manufacturers, however, are "not under a duty to make or design a fool-proof product." *Adroit Supply Co. v. Electric Mut. Liab. Ins. Co.,* 112 Ariz. 385, 390, 542 P.2d 810, 815 (1975). Chaurasia's only authority, *Kalil Bottling Co. v. Burroughs Corp.,* 127 Ariz. 278, 619 P.2d 1055 (App.1980), involves a dispute under the UCC concerning a contract that the warrantor was held to have breached by not repairing the problem within a reasonable time. *Kalil Bottling* has no application to Chaurasia's MMWA claims.

---

**2.** *See Kalil Bottling Co. v. Burroughs Corp.,* 127 Ariz. 278, 282, 619 P.2d 1055, 1059 (App.1980); *Roberts v. Morgensen Motors,* 135 Ariz. 162, 166, 659 P.2d 1307, 1311 (App.1982). Arizona's Lemon Law allows a consumer to bring an action for refund or replacement if the manufacturer fails to conform the vehicle to an express warranty after a reasonable number of attempts. *See* A.R.S. § 44–1263(A) (2004).

The majority view is that, when a limited warranty is given to repair or replace parts, and all efforts to comply have failed after reasonable attempts to correct the problem, claims are

based on the state UCC. Such claims are premised on the theory that the warranty has failed of its essential purpose. John S. Herbrand, Annotation, *Construction and Effect of New Motor Vehicle Warranty Limiting Manufacturer's Liability to Repair or Replacement of Defective Parts,* 2 A.L.R.4th 576, § 5(b) (1980 and 2004 Supp.); *Perry v. Gulf Stream Coach, Inc.,* 814 N.E.2d 634, 644 (Ind.App.Ct.2004), *rehearing denied* (Oct. 26, 2004); *Razor,* 286 Ill.Dec. 190, 813 N.E.2d at 258–59; *Lara,* 264 Ill.Dec. 416, 770 N.E.2d at 728–29.

**B. As a matter of law, the implied warranty claim fails due to lack of privity**

¶ 14 Chaurasia also contends that the MMWA creates a new claim for breach of implied warranties and revocation of acceptance. He claims that his purchase was subject to the implied warranty under the federal statute, which states in relevant part:

> No supplier may disclaim or modify ... any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

15 U.S.C. § 2308(a). Chaurasia also claims a right to revoke acceptance based upon the impaired tender of the vehicle under 15 U.S.C. § 2310(d)(1), which provides in part:

> Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . .

¶ 15 Contrary to Chaurasia's assertions, the MMWA does not create new claims for breaches of implied warranties and revocation of acceptance. Instead, such claims are defined as "arising under" state law, *see* 15 U.S.C. § 2301(7), and the MMWA affords no greater rights than those under state law for pursuing implied warranty claims against remote manufacturers.[3] Accordingly, Arizona privity requirements apply to Chaurasia's claims based on the alleged breach of an implied warranty and revocation of acceptance.

¶ 16 Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty. *Flory v. Silvercrest Indus., Inc.*, 129 Ariz. 574, 579–81, 633 P.2d 383, 388–90 (1981) (economic losses are not recoverable for breach of an implied warranty absent privity of contract); *accord Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, 1527 (D.D.C.1984) (a plaintiff may not recover for breach of implied warranty without a showing of privity). Accordingly, Chaurasia must show that privity existed between him and the manufacturer, GM. Chaurasia cannot do so because he bought the Corvette from NuCar Connection, not from GM. *See Plagens v. Nat'l RV Holdings, Inc.*, 328 F.Supp.2d 1068, 1074 (D.Ariz.2004) (citations omitted) (granting summary judgment on a MMWA implied warranty claim due to lack of privity).

¶ 17 Notwithstanding this requirement, Chaurasia argues that the Arizona Supreme Court eroded the privity requirement in *Flory*. The court acknowledged that the privity requirement extends to both implied and express warranties. 129 Ariz. at 578, 633 P.2d at 387. One narrow exception exists. No privity is required for certain personally injured plaintiffs to sue. *Id.* This exception does not apply to Chaurasia's economic loss claim.

¶ 18 Chaurasia also mistakenly relies upon *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984). The *Richards* court distinguished implied warranties of

---

**3.** This is the majority view. *Compare Perry*, 814 N.E.2d at 644 n. 6 (implied warranty under MMWA limited by state law that requires privity between the plaintiff and defendant), *and Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 247–49 (2nd Cir.1986) (under state law, lack of privity can defeat an implied warranty claim), *with Razor*, 286 Ill.Dec. 190, 813 N.E.2d at 257 (when a manufacturer provides an express warranty to a consumer, the MMWA provides that the express warranty provides sufficient privity for a consumer to bring a UCC claim of implied warranty against the manufacturer), *Szajna v. General Motors Corp.*, 115 Ill.2d 294, 104 Ill.Dec. 898, 503 N.E.2d 760, 769–70 (1986) (same), *Go-chey v. Bombardier, Inc.*, 153 Vt. 607, 572 A.2d 921, 924 (1990) (providing an express warranty created privity of contract with the manufacturer, enabling the consumer to revoke the contract as a remedy for the breach of implied warranty when the express warranty remedies were inadequate), *and Connick v. Suzuki Motor Co., Ltd.*, 275 Ill.App.3d 705, 212 Ill.Dec. 17, 656 N.E.2d 170, 180 (1995), *reversed in part on other grounds*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996) (holding that express warranties or promises by the manufacturer provide privity for a consumer to sue under an implied warranty theory under the MMWA but not under the UCC).

merchantability from implied warranties of workmanship and habitability. *Id.* at 244–45, 678 P.2d at 429–30. *Richards* eliminates the privity requirement for the second group of claims. *Id.* at 245, 678 P.2d at 430.

¶ 19 We acknowledge that some of the public policy reasons for eliminating the privity requirements for this group of claims could apply equally to purchasers of new vehicles.[4] These include the fact that manufacturing occurs on a large scale, that manufacturers hold themselves out as skilled in the business, that motor vehicles are complex, and that buyers are not generally skilled or knowledgeable in their manufacture. *Id.* The supreme court, however, explained in *Flory* that to permit implied warranty of merchantability claims without requiring privity "to vindicate every disappointed consumer would unduly complicate the [UCC's] scheme, which recognizes the consensual elements of commerce." 129 Ariz. at 580, 633 P.2d at 389 (quoting *State ex rel. Western Seed Prod. Corp. v. Campbell*, 250 Or. 262, 442 P.2d 215, 217–18 (1968)). In light of these precedents, we leave any further expansion of *Richards* to the Arizona Supreme Court.

**C. As a matter of law, the revocation of acceptance claim fails for lack of privity**

¶ 20 We likewise reject Chaurasia's claim for revocation of acceptance based upon his lack of privity with GM. Chaurasia is entitled to invoke revocation of acceptance as a remedy, but only to the extent allowed by Arizona law. Our case law extends the privity requirement to plaintiffs seeking revocation of acceptance from a manufacturer. *See Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 600, 638 P.2d 210, 214 (1981). The court's rationale for not holding a remote manufacturer liable was:

> The remedies associated with revocation of acceptance are intended to return the buyer and seller to their presale positions. In general, the buyer is entitled to recovery of the purchase price plus all damages caused by the seller's failure to deliver conforming goods; the seller can recover the goods sold. But a manufacturer does not receive the buyer's purchase price and no longer has an ownership interest in the goods sold.

*Id.*

¶ 21 Alternatively, Chaurasia asserts that the MMWA itself allows for revocation of acceptance and limitless equitable relief. We find no authority to justify this claim.[5] Among the Arizona authorities Chaurasia cites are *Roberts* and *Kalil.* Both cases involved revocations against the direct seller.

¶ 22 Chaurasia also relies on *Haugland v. Winnebago Industries*, 327 F.Supp.2d 1092 (D.Ariz.2004). That case concerned a motion to dismiss, and the court never reached the merits of the revocation of acceptance claim.

---

4. A number of courts have avoided or found the privity requirement to be met when the manufacturer issued a warranty or made other representations, and the claim was for defective goods. A.E. Korpela, Annotation, *Privity of Contract Essential in Action Against Remote Manufacturer or Distributor for Defects in Goods Not Causing Injury to Person or Other Property*, 16 ALR 3d 683, §§ 2 and 5 (1967 and 2005 Supp.).

5. Chaurasia's cases focus on the abolishment of privity by certain legislatures or the loosening of state laws concerning remote manufacturers. *See Gochey*, 153 Vt. 607, 572 A.2d 921 (permitting revocation under the MMWA based upon an interpretation of Vermont's UCC); *Volkswagen of Am., Inc. v. Novak*, 418 So.2d 801 (Miss.1982) (Mississippi Legislature abolished the privity requirement under the UCC); *Ventura*, 180 N.J.Super. 45, 433 A.2d 801; *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977) (allowing revocation based upon an interpretation of Minnesota law); *Beal v. General Motors Corp.*, 354 F.Supp. 423 (D.Del.1973) (allows remedies based upon an interpretation of Delaware law).

Chaurasia also cites several unpublished cases from Illinois, which we decline to address. *See Walden Books Co. v. Dep't of Revenue*, 198 Ariz. 584, 589, ¶ 20, 12 P.3d 809, 814 (App.2000). In one published case, *Jones v. Fleetwood Motor Homes*, an Illinois district court held that the prerequisites for equitable relief apply to the refund and recission relief available under 15 U.S.C. § 2304(a)(4) of the MMWA. 127 F.Supp.2d 958, 967 (N.D.Ill.2000) (citations omitted). Because the plaintiff had an adequate legal remedy in the form of damages, he could not avail himself of the equitable remedies. *Id.* Similarly, Chaurasia requested monetary damages in his complaint, which provide an adequate remedy. He did not seek refund and replacement, remedies applicable to full warranties. 15 U.S.C. §§ 2303, 2304.

*Id.* The plaintiff's complaint stated that he had not been afforded the "remedies" to which he was entitled and that the defendants failed to comply with their "statutory duties." *Id.* at 1098. Thus, while the complaint was sufficient to withstand a motion to dismiss, *Haugland* did not hold on the merits that the plaintiff could succeed without a showing of privity. *Id.* For the reasons stated above, we conclude that any abolishment or change to the privity requirement should be left to the Arizona Supreme Court.

¶ 23 Chaurasia insists that we should abolish the privity requirement as contrary to public policy. We decline to do so. *See Hayden Bus. Ctr. Condos. Ass'n v. Pegasus Dev. Corp.*, 209 Ariz. 511, 513–14, ¶¶ 9–14, 105 P.3d 157, 159–60 (App.2005), *review denied* (Nov. 29, 2005) (citations omitted) (interpreting *Richards* to limit exception to privity requirement to claims against homebuilders for breach of implied warranties of habitability and good workmanship based on public policy considerations and declining to extend exception). Consumers have other avenues to obtain relief from manufacturers, including claims for express warranties, which do not require privity.

## D. The trial court did not abuse its discretion in awarding attorneys' fees to GM

### 1. Chaurasia's claims arise out of contract for purposes of A.R.S. § 12–341.01(A)

¶ 24 We turn now to Chaurasia's claim that GM is not entitled to attorneys' fees under A.R.S. § 12–341.01(A). The application of A.R.S. § 12–341.01(A) to Chaurasia's claims is a question of statutory interpretation that we review de novo. *Hampton v. Glendale Union High Sch. Dist.*, 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (App.1992) (citations omitted). The pivotal question is whether the asserted claims arise out of an express or implied contract for purposes of A.R.S. § 12–341.01(A). The statute permits recovery for a non-contract action if that action could not exist but for the breach of contract. *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982).

¶ 25 Attorneys' fees are not recoverable, however, if the contract serves only as a factual predicate for the action and not its essential basis. *Cashway Concrete & Materials v. Sanner Contracting Co.*, 158 Ariz. 81, 83, 761 P.2d 155, 157 (App.1988). We must examine the nature of the action and the surrounding circumstances to determine whether the claim is one "arising out of a contract." *Marcus v. Fox*, 150 Ariz. 333, 335, 723 P.2d 682, 684 (1986) (citation omitted). The contract must have some causal connection with the claim to justify an award of attorneys' fees. *Id.*

¶ 26 According to Chaurasia, A.R.S. § 12–341.01(A) does not apply here because his claim arises not out of contract but out of a statute, the MMWA. Chaurasia's labeling of the claim as a MMWA action does not make it a statutory action. The MMWA is a federal statute codifying a consumer's rights under state law to bring warranty actions, and it creates no warranties and does not require that any warranties be given. *See Welch v. Fitzgerald–Hicks Dodge, Inc.*, 121 N.H. 358, 430 A.2d 144, 149 (N.H.1981). Moreover, Chaurasia never claimed that GM violated the MMWA by failing to comply with warranty disclosure regulations (16 C.F.R. § 701.3), warranty labeling requirements (15 U.S.C. § 2303(a)), or the provision governing limitations on the duration of implied warranties (15 U.S.C. § 2308(b)). Therefore, based upon the nature of the action and the surrounding circumstances, we conclude that Chaurasia's claim does not arise under the MMWA.[6] Although the claim

---

6. Chaurasia relies upon *Muller v. Winnebago Industries, Inc.* to support his argument that the MMWA, not the terms of the warranty, govern a case brought under the MMWA. 318 F.Supp.2d 844 (D.Ariz.2004). In *Muller*, however, the district court applied Arizona law, not the MMWA, when discussing limited warranties. *Id.*

Equally unavailing is Chaurasia's reliance upon *Lemons v. Showcase Motors, Inc.*, 207 Ariz. 537, 88 P.3d 1149 (App.2004). In *Lemons*, we determined that the MMWA controlled the consumer's claims. *Id.* at 539, ¶ 7, 88 P.3d at 1151. The action was brought against the dealer, not the manufacturer, and concerned, among other things, whether or not the dealer had adopted

involved the MMWA, this action arises out of contract.

¶ 27 Time after time, Arizona courts have held that a claim for breach of warranty does arise out of contract for purposes of A.R.S. § 12–341.01(A). *See Colberg v. Rellinger,* 160 Ariz. 42, 770 P.2d 346 (App.1998) (holding that claims for breach of express warranties sound in contract); *see also Woodward v. Chirco Constr. Co., Inc.,* 141 Ariz. 514, 687 P.2d 1269 (1984) (holding that claims for breach of implied warranty arise out of contract); *Ponderosa Plaza v. Siplast,* 181 Ariz. 128, 888 P.2d 1315 (App.1993) (awarding reasonable attorneys' fees to the defendant under A.R.S. § 12–341.01(A), finding that any duty to the plaintiff arose out of an express warranty and that a breach of that warranty arises out of contract, not tort). Chaurasia asserts claims for breach of express and implied warranties, claims he would not have but for GM's representation.

### 2. The terms of the MMWA and A.R.S. § 12–341.01(A) do not prohibit the application of A.R.S. § 12–341.01(A) to this case

¶ 28 Chaurasia further claims that the Arizona Legislature carved out an exception to A.R.S. § 12–341.01(A) when any other provision is at issue. This argument reflects a misunderstanding of the statute's terms.

¶ 29 Section 12–341.01(A) states that "[t]his section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees." According to Chaurasia, this statute should not apply when a more specific provision is at issue, such as the MMWA.

¶ 30 Chaurasia overlooks federal authorities explaining that "since the federal act contains no prescription against the assessment of attorney fees to a prevailing defendant state law would continue in force." *Deadwyler v. Volkswagen of Am., Inc.,* 748 F.Supp. 1146, 1150 (W.D.N.C.1990); *see also Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1014 (D.C.Cir.1986). The trial court's discre-

tionary award of attorneys' fees in this case does not alter, prohibit, or restrict "present or future contracts or statutes that may provide for attorney fees." *See* A.R.S. § 12–341.01(A).

¶ 31 Equally unavailing is Chaurasia's reliance upon *Lange v. Lotzer,* 151 Ariz. 260, 727 P.2d 38 (App.1986), and *Fugate v. Town of Payson,* 164 Ariz. 209, 791 P.2d 1092 (App. 1990). Both cases involved quiet title actions that entail specific statutory procedures for the parties to obtain attorneys' fees. The parties in these cases did not follow the statutory steps. *Fugate,* 164 Ariz. at 211, 791 P.2d at 1094; *Lange,* 151 Ariz. at 261–62, 727 P.2d at 39–40. As a result, the courts declined to apply A.R.S. § 12–341.01(A) because it would circumvent the quiet title statute's requirements. *Id.* at 211, 791 P.2d at 1094; *Lange,* 151 Ariz. at 262, 727 P.2d at 40. In contrast, the MMWA does not prohibit attorneys' fees to a prevailing defendant or provide specific procedures for obtaining fees.

¶ 32 We also find that Chaurasia has misplaced his reliance on *Sullivan v. State Land Department,* 172 Ariz. 599, 838 P.2d 1360 (App.1992), and *Coldwell Banker Commercial Group, Inc. v. Camelback Office Park,* 156 Ariz. 214, 751 P.2d 530 (App.1987), *aff'd in part, vacated in part,* 156 Ariz. 226, 751 P.2d 542 (1988). The mandatory fee provisions in the respective contracts controlled the analysis in those cases, not the statute. Because the limited warranty in this case does not provide for attorneys' fees, A.R.S. § 12–341.01(A) still applies.

¶ 33 Finally, we derive no meaningful guidance from *Berry v. State,* 145 Ariz. 12, 699 P.2d 387 (App.1985). *Berry* stands for the proposition that a specific statute governs over a general statute. *Id.* at 13, 699 P.2d at 388 (citations omitted). But case law indicates that the MMWA was not intended to displace state law absent a conflict:

There is nothing obscure about the interplay [between state implied warranty law and federal standards that] Congress or-

the manufacturer's warranty and whether the dealer was a party to the service contract. *Id.* at

540–41, ¶¶ 13–17, 88 P.3d at 1152–53.

dered: state law creates the warranty and also governs its dimensions, except as otherwise prescribed with particularity in Magnuson–Moss itself. The Federal prescriptions apply as written; where the Act states no prescription, state law continues in force.

*Walsh,* 807 F.2d at 1014. Neither the MMWA nor the terms of A.R.S. § 12–341.01(A) preclude the attorneys' fee award in this case.

### 3. The Constitution does not prohibit the fee award

¶ 34 Chaurasia alternatively argues that the MMWA preempts the application of A.R.S. § 12–341.01(A). The Supremacy Clause of the United States Constitution provides the basis for a preemption claim: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI; *see generally Hodel v. Va. Surface Min. and Reclamation Ass'n,* 452 U.S. 264, 290, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (although preemption may curtail or prohibit "the States' prerogatives to make legislative choices respecting subjects the States may consider important, the Supremacy Clause permits no other result").

¶ 35 Chaurasia contends that 15 U.S.C. § 2310(d)(2), which permits a prevailing consumer to recover attorneys' fees and other costs under the MMWA, preempts A.R.S. § 12–341.01(A). We review constitutional issues de novo because they involve questions of law. *Little v. All Phoenix S. Cmty. Mental Health Ctr., Inc.,* 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995) (citation omitted).

¶ 36 The United States Supreme Court has stated that, when Congress legislates in a field traditionally occupied by the states, "we start with the assumption that the historic police powers of the States were not to be superseded by [federal law and regulations] unless that was the clear and manifest purpose of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 206, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Because consumer protection and warranty law were fields traditionally occupied by the states until Congress enacted the MMWA in 1975, *Motor Vehicle Manufacturers Association of the United States, Inc. v. Abrams,* 899 F.2d 1315, 1316–17 (2nd Cir.1990), we look for compelling evidence of an intention to preempt. *Environmental Encapsulating Corp. v. City of New York,* 855 F.2d 48, 58 (2nd Cir.1988) (citations omitted).

¶ 37 Preemption may be express or implied or may result from an actual conflict between federal and state law. *Motor Vehicle Mfrs.,* 899 F.2d at 1318. Chaurasia does not establish preemption on any of these grounds.

¶ 38 Express preemption exists when Congress has expressly stated its intention that state law be preempted. *See Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). This form of preemption does not apply. Although the Act contains an express preemption clause, it does not concern attorneys' fee awards. *See* 15 U.S.C. § 2311(c).

¶ 39 Nor is there any basis for implied preemption. That form of preemption exists when the scheme of federal regulation is so comprehensive that it is reasonable to infer that Congress intended to occupy the field and that it "left no room" for supplementary state regulation. *See, e.g., Rice,* 331 U.S. at 230, 67 S.Ct. 1146 (citations omitted). The MMWA contains a savings clause providing that "[n]othing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law." 15 U.S.C. § 2311(b)(1); *see generally Moedt v. General Motors Corp.,* 204 Ariz. 100, 103, ¶ 6, 60 P.3d 240, 243 (App.2002). Moreover, an implied warranty under the MMWA is defined as an implied warranty "arising under State law." 15 U.S.C. § 2301(7). It follows that the MMWA preserves rights

and remedies under state law, including attorneys' fee statutes.[7]

¶ 40 Finally, state law may be preempted if the federal and state law conflict either because "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or because the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). No conflict exists between the state and federal statutes here. According to 15 U.S.C. § 2310(d)(2): "If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees)." Manifestly, this statute does not conflict with A.R.S. § 12–341.01(A), which permits awards of reasonable attorneys' fees to the successful party in any contested action arising out of an express or implied contract. Therefore, preemption does not apply and cannot preclude application of A.R.S. § 12–341.01(A).

¶ 41 We find Chaurasia's preemption cases unpersuasive. None of his authorities analyzes preemption of state attorneys' fee statutes under the MMWA's fee provision.[8] Moreover, their arguments are analogous to those made in *Deadwyler*. The district court rejected these arguments and applied various state fee statutes to the defendant's claim for attorneys' fees. *Deadwyler*, 748 F.Supp. at 1150–56.

## 4. Public policy does not prohibit the fee award

¶ 42 Chaurasia further contends that public policy requires us to vacate the fee award. Contrary to his assertions, neither Arizona law nor public policy supports a deviation from the plain terms of A.R.S. § 12–341.01(A).

¶ 43 The statute is designed to "mitigate the burden of the expense of litigation to establish a just claim or a just defense." A.R.S. § 12–341.01(B). The legislature intended that the risk of paying the opposing party's attorneys' fees would encourage more careful analysis prior to filing suit. *All–Way Leasing, Inc. v. Kelly*, 182 Ariz. 213, 219, 895 P.2d 125, 131 (App.1994). There is no indication that the legislature intended to specially exempt consumers from paying attorneys' fees. *See Mullins v. S. Pac. Transp. Co.*, 174 Ariz. 540, 543, 851 P.2d 839, 842 (App.1992); *Catalina Foothills Ass'n v. White*, 132 Ariz. 427, 429, 646 P.2d 312, 314 (App.1982). We reject the contention that consumers like Chaurasia are exempt from paying fees under A.R.S. § 12–341.01(A).

¶ 44 Chaurasia's authority, *Wildwood Hills Mobile Home Park v. Arizona Department of Building and Fire Safety*, fails to support his arguments. 180 Ariz. 443, 885 P.2d 131 (App.1994). In *Wildwood*, the landlord of a mobile home park sought judicial review of an administrative hearing officer's decision

---

**7.** Chaurasia contends that *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Hanlin* supports implied preemption, but his reliance upon that case is misplaced. 148 Ariz. 23, 712 P.2d 936 (App. 1985). The federal statute there, part of the National Labor Relations Act, required uniform application of the federal labor policy. *Id.* at 30, 712 P.2d at 943. The courts could resort to state law only if it was compatible with the purpose of the statute, and the state law could not provide "an independent source of private rights." *Id.* at 27, 712 P.2d at 940 (citation omitted). Accordingly, we reversed the attorneys' fee award under A.R.S. § 12–341.01(A) because "federal labor policy supported denial of an award of fees in any case." *Id.* at 30, 712 P.2d at 943. In contrast, the MMWA has a savings clause directing courts to apply rights and remedies available under state law. No implied preemption exists here.

**8.** The attorneys' fees cases cited deal with the reasonableness of the fee award. *See Jordan v. Transnational Motors, Inc.*, 212 Mich.App. 94, 537 N.W.2d 471 (1995); *Rice v. Mike Ferrell Ford, Inc.*, 184 W.Va. 757, 403 S.E.2d 774 (1991) (superseded by statute); *Skelton v. Gen. Motors Corp.*, 661 F.Supp. 1368 (N.D.Ill.1987), *aff'd in part and rev'd in part*, 860 F.2d 250 (7th Cir. 1988). *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), and *Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002), do not even deal with the MMWA.

awarding the mobile home tenants reimbursement for rental overcharges. *Id.* at 446, 885 P.2d at 134. In the exercise of our discretion, we declined to award attorneys' fees under A.R.S. § 33–1408(C) to the prevailing landlord. *Id.* at 449–50, 885 P.2d at 137–38. Because A.R.S. § 33–1408(C) resembles A.R.S. § 12–341.01(A), we based this decision on factors listed in *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 569–70, 694 P.2d 1181, 1183–84 (1985). *Wildwood,* 180 Ariz. at 450, 885 P.2d at 138.

¶ 45 *Wildwood* does not support the public policy argument because it is not factually analogous to this case. Nor does it modify, change, or affect the *Warner* factors. The court denied fees based upon its discretion, not based upon the applicability of the statute to a given class of parties.

   5. **Privity of contract is not a relevant factor in determining whether to award attorneys' fees under A.R.S. § 12–341.01(A)**

■■■ ¶ 46 Finally, Chaurasia argues that GM is not entitled to recover attorneys' fees under A.R.S. § 12–341.01(A) because it lacks privity of contract. According to Chaurasia, "arise out of contract" means privity of contract.

■■■ ¶ 47 A defendant seeking attorneys' fees under A.R.S. § 12–341.01(A) need not be a party to the contract forming the basis for the award. *See Kennedy v. Linda Brock Auto. Plaza, Inc.,* 175 Ariz. 323, 325–26, 856 P.2d 1201, 1203–04 (App.1993); *see also Title Ins. Co. of Minn. v. Costain Ariz., Inc.,* 164 Ariz. 203, 791 P.2d 1086 (App.1990) (title insurer, as the purchaser's subrogee against the seller for breach of warranty of title, was entitled to an award of attorneys' fees under A.R.S. § 12–341.01(A) even though it was not a party to the warranty contract).

¶ 48 In a similar vein, Chaurasia contends that attorneys' fees under A.R.S. § 12–341.01(A) are not available because GM did not prove the existence of a contract. Chaurasia, however, has never disputed that GM

---

9. Chaurasia mistakenly relies upon *Flory,* 129 Ariz. at 581, 633 P.2d at 390, as authority for his privity argument. In *Flory,* the court commented on the plaintiff's burden on remand to

---

issued a limited written warranty for the Corvette. In fact, he appeared to accept the warranty's terms by seeking service under it.[9]

**CONCLUSION**

¶ 49 We affirm the trial court's ruling in all respects. In addition, we award GM reasonable attorneys' fees and costs incurred in this appeal, subject to its compliance with ARCAP 21(c).

CONCURRING: DONN KESSLER, Presiding Judge and PATRICK IRVINE, Judge.

prove the existence of a contract for the substantive claim, and not for purposes of A.R.S. § 12–341.01(A). *Id.*